UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT A. RIVAS CAMPOS (A# 244-851-525),<br><br>Petitioner,<br><br>v.<br><br>CHRISTOPHER CHESTNUT, et al.,<br><br>Respondents. | No.  1:26-cv-01330 DJC SCR<br><br><br>FINDINGS & RECOMMENDATIONS |

Petitioner is a federal immigration detainee who is proceeding through counsel with this habeas corpus action pursuant to 28 U.S.C. § 2241.  The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.  For the reasons provided below, the undersigned finds that Petitioner's detention of nearly thirteen months is excessive in relation to the purposes of such detention and therefore violates substantive due process.  Petitioner should be released from Respondents' custody, subject to reasonable conditions of release.

I.    **Factual and Procedural History**

A.  **Section 2241 Petition**

Petitioner is a native and citizen of Venezuela who fled the country with his partner and two children to seek asylum in the United States.  ECF No. 1 at 2, ¶ 2.  On or around December

1

18, 2024, the family appeared for an appointment at the El Paso (Texas) Port of Entry he scheduled through the CBP One app. Id. ¶ 3; ECF No. 2 at 6. Customs and Border Protection ("CBP") officials charged Petitioner as removable under 8 U.S.C. § 1182(a)(7)(A)(i)(I), for lacking a valid entry document, and placed him in standard removal proceedings under 8 U.S.C. § 1229a. ECF No. 2 at 8-11. Petitioner received a notice to appear ("NTA") before an immigration judge ("IJ") on April 7, 2027. CBP granted him humanitarian parole pursuant to 8 U.S.C. § 1182(d)(5), allowing him to enter the United States lawfully. ECF No. 2 at 8.

On or around June 1, 2025, the Euless (Texas) Police Department arrested Petitioner for public intoxication, Tex. Pen. Code § 49.02.[1] ECF No. 1 at 15, ¶¶ 64-65; ECF No. 2 at 12. On June 3, 2025, Petitioner was transferred to Immigration and Customs Enforcement ("ICE") custody and detained at the Prairieland Immigration Detention Center. ECF No. 2 at 3-4. Petitioner has remained in immigration detention since then and is currently held at the California City Detention Center, within this judicial district. ECF No. 1 at 5, ¶ 16. Petitioner's public intoxication charge remains pending, as he has been unable to appear in Texas Court to contest it. Id. at 16, ¶ 66.

On December 29, 2025, at about the six-month mark of his detention, Petitioner received a bond hearing before an IJ pursuant to Rodriguez v. Robbins, 715 F.3d 1127 (9th Cir. 2013).[2] ECF No. 1 at 16-17, ¶¶ 77-79; ECF No. 10-3. The government bore the burden of establishing Petitioner's flight or danger risk by clear and convincing evidence and submitted several exhibits, including Petitioner's NTA, Form I-213 ("Record of Deportable or Inadmissible Alien"), and Form I-589 (application for asylum and withholding of removal). ECF No. 17-1 at 1-2. Petitioner was represented by counsel and offered character declarations from his cousin/sponsor,

[1] "The offense of public intoxication is a Class C misdemeanor . . . punishable 'by a fine not to exceed $500.'" Graham v. Dallas Area Rapid Transit, 288 F. Supp. 3d 711, 743 (N.D. Tex. 2017).
[2] In Rodriguez v. Robbins, 715 F.3d 1127 (9th Cir. 2013), rev'd and remanded sub. nom. Jennings v. Rodriguez, 583 U.S. 281 (2018), the Ninth Circuit granted a preliminary injunction to putative subclasses of noncitizens subject to mandatory detention statutes, including 8 U.S.C. § 1225(b), seeking individualized bond hearings after their detention had become prolonged. The Court held the § 1225(b) subclass was "likely to succeed on the merits of their claim that § 1225(b) must be construed to authorize only six months of mandatory detention, after which detention is authorized by § 1226(a) and a bond hearing is required." Id. at 1144.

partner, and other supporters, as well as records pertaining to his misdemeanor proceedings in Texas.  Id. at 2.

The IJ found that the Petitioner was a flight risk and declined Petitioner's request to testify.  ECF No. 17-1 at 10.  After Petitioner's counsel requested the IJ's reasoning to aid in appeal, the IJ explained:

> [T]he court does not find that the . . . ties to the United States are sufficiently strong.  He's only been in the United States for a very short period of time . . . does not have any property.  The … family is limited to a female cousin, and the [] DHS filed a copy of the I-589.  Whether or not that gets granted, I don't know.  But . . . there's sparse detail in that.  [O]n this record, there's insufficient evidence to show that the respondent has a clear pathway to relief.  [S]o those are . . . some of the court's concerns.  Also . . . it's not helpful that he got himself arrested.  I'm not making a danger finding, but that's not helpful to . . . flight risk either.  [S]o those are . . . some of the court's reasons.

Id. (cleaned up).  After argument, the IJ issued a short, written decision that read in full: "DHS met its burden to establish by clear and convincing evidence that the applicant's release would pose such a significant flight risk that no amount of bond and/or alternatives to detention would be appropriate."  ECF No. 10-3 at 1.  Citing futility, Petitioner acknowledges he did not appeal the ruling to the BIA.  See ECF No. 1 at ¶¶ 99-101.  According to the EOIR automated system, Petitioner was ordered removed on May 28, 2026, and reserved appeal.  The deadline to appeal the order of removal to the BIA is June 29, 2026.[3]

Petitioner filed this habeas action on February 16, 2026, raising four claims.  First, he contends his detention violates substantive due process because it is punitive and unrelated to a legitimate risk of flight or danger.  ECF No. 1 at 19-20.  Petitioner next alleges his detention without valid parole revocation violates procedural due process.  Id. at 20-21.  Petitioner's third claim alleges that his detention under 8 U.S.C. § 1225(b) without valid revocation of parole violates the INA.  Id. at 21-22.  Finally, his fourth claim challenges the legal adequacy of his bond hearing.  Id. at 22.  By way of relief, Petitioner requests immediate release and an order

---

[3]  The undersigned takes judicial notice of Petitioner's EOIR case information page, https://acis.eoir.justice.gov/en/caseInformation.  See Fed. R. Evid. 201(b)-(c).

3

enjoining his re-detention absent a pre-deprivation hearing.  Id. at 22-23.

Respondents oppose the petition and assert that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2) and received proper notice of his parole revocation per 8 C.F.R. § 212.5(e)(2)(i).  ECF No. 10 at 3-4.  Respondents further argue that Petitioner has no substantive liberty interest as an applicant for admission under § 1225(b).  Id. at 4-6.  Finally, respondents argue that Petitioner received a lawful bond hearing, and that he has waived any argument that the IJ erred in denying his release by failing to timely appeal to the BIA.  Id. at 6-7.

### B.  Motion for Temporary Restraining Order

Petitioner filed a motion for temporary restraining order ("TRO") on February 17, 2026, tracking the petition's procedural due process (Count 2) and bond hearing (Count 4) claims.  ECF No. 7.  District Judge Calabretta denied the TRO motion on March 4, 2026, writing that Petitioner had not established an abuse of discretion by the IJ.  ECF No. 12.  Judge Calabretta did not consider Petitioner's procedural due process claim, explaining that "[t]he remedy for any violations of Petitioner's parole revocation would be a deprivation hearing, and because Petitioner was given a hearing, the Court considers only the constitutionality of the hearing he received in December 2025."  Id. at 3, n.1.

### C.  Post-TRO Briefing

Following Judge Calabretta's referral, the undersigned requested additional briefing on why the TRO order should not dictate the outcome of the merits of the § 2241 petition.  ECF No. 13.  Petitioner clarified that he seeks an order that he is detained pursuant to 8 U.S.C. § 1226(a), "because such holding will allow Petitioner, at a minimum, to seek custody redetermination request based on materially changed circumstances."  ECF No. 14 at 2.  Petitioner also reiterates that respondents' revocation of his parole violates due process and that the post-deprivation hearing he received was inadequate to remedy such a violation.  Id. at 2, 8.  Regarding his substantive due process claim, Petitioner alleges that his detention "is not related to any permissible basis for civil detention" and that he received a "wholly inadequate custody hearing."  ECF No. 14 at 8.  Petitioner adds that he has "no scheduled hearing date and no assigned immigration judge," and likely faces further prolonged detention due to the uncertainty of his

removal proceedings and the appeals that will follow.[4] Id. Petitioner also provides more context for the length of his detention, explaining that he was previously ordered removed to Uganda (over his objections) but that DHS has since then reopened his removal proceedings. Id. at 8.

Respondents counter that Judge Calabretta's TRO ruling should dictate the outcome of Petitioner's procedural due process, substantive due process, and INA claims. ECF No. 15 at 2. "Judge Calabretta concisely explained that even assuming Petitioner's parole revocation was a statutory or constitutional violation, which Respondents dispute, Petitioner received the remedy for any such violation." Id. Regarding Petitioner's fourth claim challenging his bond hearing, Respondents argue Judge Calabretta properly concluded that the IJ did not abuse his discretion in finding the government satisfied its burden of proving Petitioner was a flight risk. Id.

**II.    Legal Standards**

**A.  Constitutional Standards**

The Supreme Court has held that "the Due Process Clause applies to all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001). Similarly, Ninth Circuit precedent holds that the Due Process Clause applies to noncitizens regardless of whether they are "seeking admission" or are "admitted" under immigration law. Wong v. United States, 373 F.3d 952, 973 (9th Cir. 2004), abrogated on other grounds by Wilkie v. Robbins, 551 U.S. 537 (2007); see also Rosales-Garcia v. Holland, 322 F.3d 386, 412 (6th Cir. 2003) (en banc) ("If excludable [non-citizens] were not protected by even the substantive component of constitutional due process, ... we do not see why the United States government could not torture or summarily execute them. ... [W]e conclude that government treatment of excludable [noncitizens] must implicate the Due Process Clause of the Fifth Amendment."). The Due Process Clause "protects individuals against two types of government action: violations of substantive due process and procedural due process." United States v. Quintero, 995 F.3d 1044, 1051 (9th Cir. 2021) (internal

---

[4] As noted above, the EOIR system indicates that Petitioner was ordered removed in late May 2026. It thus appears that an IJ was ultimately assigned to his case and presided over an individual merits hearing in immigration court.

5

quotation omitted).  As a matter of substantive due process, governmental action may only infringe a fundamental right if "the infringement is narrowly tailored to serve a compelling state interest."  Reno v. Flores, 507 U.S. 292, 302 (1993).

Courts examine procedural due process claims in two steps: the first step is determining whether there exists a protected liberty interest under the Due Process Clause.  The second step examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution.  See Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989); Morrissey v. Brewer, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").  In deciding what process is due to immigration detainees, the Ninth Circuit has assumed, without deciding, that the three-part test articulated in Mathews v. Eldridge, 424 U.S. 319 (1976), applies.  See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206-07 (9th Cir. 2022).  Under Mathews, the court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation of that interest; and (3) the government's interest involved including any fiscal or administrative burden that additional procedures would include.  Mathews, 424 U.S. at 335.

An as-applied challenge "contends that the law is unconstitutional as applied to the litigant's particular [circumstances], even though the law may be capable of valid application to others."  Foti v. City of Menlo Park, 146 F.3d 629, 635 (9th Cir. 1998) (citation omitted).

### B.  Statutory and Regulatory Immigration Framework

A non-citizen taken into custody at or near the border without valid entry documents is normally ordered removed "without further hearing or review" pursuant to an expedited removal process. See 8 U.S.C. § 1225(b)(1)(A)(i).  But if such non-citizen "indicates either an intention to apply for asylum . . . or a fear of persecution," then that non-citizen is referred for an asylum interview. See 8 U.S.C. § 1225(b)(1)(A)(ii).  While awaiting this credible fear interview, the non-citizen is to remain detained. See 8 U.S.C. § 1225(b)(1)(B)(iii)(IV).  If an immigration officer determines after that interview that the non-citizen has a credible fear of persecution, "the [non-citizen] shall be detained for further consideration of the application for asylum."  8 U.S.C. § 1225(b)(1)(B)(ii). At that point, the asylum applicant will receive full consideration of the asylum

6

claim in a standard removal hearing.

Non-citizens who are instead covered by § 1225(b)(2) are detained pursuant to a different process. Those noncitizens "shall be detained for a proceeding under section 1229a of this title" if an immigration officer "determines that [they are] not clearly and beyond a doubt entitled to be admitted' into the country." 8 U.S.C. § 1225(b)(2)(A). "Read most naturally, §§ 1225(b)(1) and (b)(2) thus mandate detention of applicants for admission until certain proceedings have concluded. Section 1225(b)(1) [non-citizens] are detained for 'further consideration of the application for asylum,' and § 1225(b)(2) [non-citizens] are in turn detained for [removal] proceeding[s]." Jennings, 583 U.S. at 297.

The statutory mechanism for release of a noncitizen detained under either § 1225(b)(1) or § 1225(b)(2) is temporary release on parole "for urgent humanitarian reasons or significant public benefit." Jennings, 583 U.S. at 288 (citing 8 U.S.C. § 1182(d)(5)(A)); see also 8 C.F.R §§ 212.5(b), 235.3. Such parole, however, "shall not be regarded as an admission of the [non-citizen]." 8 U.S.C. § 1182(d)(5)(A). Instead, when the purpose of the parole has been served, "the [non-citizen] shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." Id.

Under a DHS regulation, humanitarian parole is "justified only on a case-by-case basis for 'urgent humanitarian reasons' or 'significant public benefit,' provided the [noncitizens] present neither a security risk nor a risk of absconding[.]" 8 C.F.R. § 212.5(b). With regard to termination of parole, the regulation states that "[p]arole shall be automatically terminated without written notice (i) upon the departure from the United States of the [noncitizen], or, (ii) if not departed, at the expiration of the time for which parole was authorized[.]"[5] 8 C.F.R. §

---

[5] The undersigned changed "alien" to "noncitizen" in these passages. This has become commonplace among jurists at the Supreme Court and Ninth Circuit in recent years. See Patel v. Garland, 596 U.S. 328 (2022) (Barrett, J.); United States v. Palomar-Santiago, 593 U.S. 321 (2021) (Sotomayor, J.); Barton v. Barr, 590 U.S. 222, 226 n.2, (2020) (Kavanaugh, J.) ("This opinion uses the term 'noncitizen' as equivalent to the statutory term 'alien.'") (citing 8 U.S.C. § 1101(a)(3); Avilez v. Garland, 69 F.4th 525 (9th Cir. 2023); Arce v. United States, 899 F.3d 796 (9th Cir. 2018).

212.5(e)(1). In all other cases, "upon accomplishment of the purpose for which parole was authorized or when . . . neither humanitarian reasons nor public benefit warrants the continued presence of the [noncitizen] in the United States, parole shall be terminated upon written notice to the [noncitizen] and he or she shall be restored to the status that he or she had at the time of parole." 8 C.F.R. § 212.5(e)(2)(i). "When a charging document is served on the [noncitizen], the charging document will constitute written notice of termination of parole[.]" Id.

### III.  Analysis

#### A. Applicable Detention Statute

"Where a [noncitizen] falls within [the] statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." Prieto-Romero v. Clark, 534 F.3d 1053, 1057 (9th Cir. 2008). Respondents contend that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2), ECF No. 10 at 3, whereas Petitioner states his detention is governed by 8 U.S.C. § 1226(a), ECF No. 14 at 2.

Based on Petitioner's placement in removal proceedings under § 1229a, his parole under § 1182(d)(5), and receipt of a Robbins hearing, the undersigned concludes that Petitioner is detained under § 1225(b).[6] He remains subject to that provision given that his order of removal is not administratively final. See Avilez, 69 F.4th at 531 (detention shifts to 8 U.S.C. § 1231 "on the latest of either (1) the date a noncitizen's 'order of removal becomes administratively final,' (2) the date of a court's final order, if the noncitizen's removal order is judicially reviewed and [the Ninth Circuit Court of Appeals] stays the noncitizen's removal, or (3) the date the noncitizen is released from criminal detention or confinement.") (quoting 8 U.S.C. § 1231(a)(1)(B)(i)-(iii). Section 1225(b) is a "mandatory" detention statute under which a bond hearing is not authorized by statute or regulation. See Jennings, 583 U.S. at 288.

---

[6] Petitioner's initial NTA does not reflect an asylum application or that Petitioner was placed on the 1225(b)(1) track. See ECF No. 2 at 8. His detention, at least initially, was then governed by § 1225(b)(2). See Innovation L. Lab v. McAleenan, 924 F.3d 503, 507 (9th Cir. 2019) ("All applicants for admission who are not processed for expedited removal are placed in regular removal proceedings under § 1225(b)(2)(A). That process generally entails a hearing before an immigration judge pursuant to § 1229a.").

8

Petitioner's arguments for § 1226(a) are unavailing.  As Petitioner observes (see ECF No. 11 at 2, n.1), the Form I-200 used in his arrest does cite INA § 236—i.e., 8 U.S.C. § 1226—as the basis for his re-detention.  ECF No. 10-1.  Respondents make no effort to explain this discrepancy, which is just one of many errors strewn throughout Petitioner's immigration record.[7]  But despite the form's reference to § 1226, by operation of law, the basis of Petitioner's detention reverted to § 1225(b) upon termination of parole.  "[W]hen the purpose of the parole has been served, 'the [non-citizen] shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.'"  Jennings, 583 U.S. at 288 (citing § 1182(d)(5)(A)); see also Matter of Castillo-Padilla, 25 I. & N. Dec. 257, 259 (BIA 2010) ("After the purpose of the parole has been served, the [non-citizen] returns to custody, and his or her case is dealt with in the same manner as any other applicant for admission.").  While the Court is sympathetic to Petitioner's arguments that ICE unlawfully revoked his parole, that does not mean that some other statute now governs his detention.

Further, Petitioner's argument that "[a]n ever-growing chorus of federal courts have found that § 1225(b) is inapplicable where a noncitizen has been paroled into the U.S., the parole has not been revoked, and rearrest occurs" misstates those holdings.  ECF No. 1 at 3-4, ¶ 10.  Some of the cases Petitioner cites involved an order of release under the Due Process Clause but did not question § 1225(b) as the applicable detention statute.  See e.g., Doe v. Becerra, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (finding Petitioner established a likelihood of success in showing "he has an interest in his continued liberty and that mandatory detention under section 1225(b)(1)(B)(ii) would violate his due process rights unless he is afforded adequate process").  Many others involved a release pursuant to § 1226, not the humanitarian parole of an applicant for admission under § 1182(d)(5).  See, e.g., Luis Alberto R.C. v. Murray, No. 1:25-CV-01618-KES-SKO (HC), 2025 WL 3648143, at *1 (E.D. Cal. Dec. 16, 2025); M.K. v. Arteta, No. 25-CV-

[7]  For example, despite Petitioner's CBP One appointment and release on parole, the Form I-213 falsely states that he "illegally entered the United States on December 18, 2024" and is "illegally present" in the country.  See ECF No. 2 at 5-6.  The form's "encounter data" field also reflects the name of a different noncitizen.  Id. at 5.

9918 (LAK), 2025 WL 3720779, at *1 (S.D.N.Y. Dec. 23, 2025).

Accordingly, the undersigned finds that Petitioner is detained pursuant to § 1225(b) and is not entitled to the procedural protections of § 1226(a).  For this reason, Petitioner is not entitled to relief on his INA claim (Count 3), which alleges that 8 U.S.C. § 1225(b) does not lawfully authorize his detention.  ECF No. 1 at 21-22, ¶¶ 116-120.

### B.  Procedural Due Process Analysis

#### i.  Liberty Interest

Respondents argue that Petitioner lacks a protected liberty interest as an "arriving alien."  ECF No. 10 at 4-5.  District courts within this Circuit have repeatedly rejected this argument, and the undersigned finds it particularly troubling in the context of a humanitarian parolee who arrived in the United States pursuant to a CBP One appointment and who has developed meaningful ties to the United States.  Still, the undersigned will briefly explain why this argument is wholly without merit.

First, the undersigned joins other district courts in rejecting Respondents' argument, based on Barrera-Echavarria v. Rison, 44 F.3d 1441 (9th Cir. 1995) (en banc), superseded by statute as recognized by Xi v. I.N.S., 298 F.3d 832 (9th Cir. 2002), that the Due Process Clause does not apply to Petitioner because he has not effected an entry into the United States.  ECF No. 10 at 4-5.  For instance, in R.A.N.O. v. Wofford, No. 1:25-cv-1535 KES EPG (HC), 2026 WL 40507 (E.D. Cal. Jan. 6, 2026), a judge of this Court explained that "'the statute interpreted in Barrera-Echavarria no longer exists,' and subsequent amendments to the immigration laws 'introduced an entire set of legal concepts purporting to redefine the "basic territorial distinction" at play in immigration law.'"  2026 WL 40507, *3 (quoting Xi, 298 F.3d at 838)); see also Ortega v. Noem, No. 1:25-cv-1663 DJC CKD, 2025 WL 3511914, at *2 (E.D. Cal. Dec. 8, 2025) (rejecting government's "narrow statutory reading," drawing from Barrera-Echavarria, that "because Petitioner's legal status is circumscribed by the statutory provision requiring mandatory detention under § 1225(b)(2), the Due Process Clause does not apply").

Second, Respondents' reliance on Dep't of Homeland Sec. v. Thuraissigiam, 591 U.S. 103, 139 (2020), for a similar proposition is misplaced.  The Thuraissigiam Court's "discussion of

10

due process is necessarily constrained to challenges to admissibility to the United States" and "[t]he Court answered no broader question." Padilla v. U.S. Immigr. & Customs Enf't, 704 F. Supp. 3d 1163, 1171-72 (W.D. Wash. 2023); see also Sadeqi v. LaRose, 809 F. Supp. 3d 1090, 1093 (S.D. Cal. 2025) (interpreting Thuraissigiam as "circumscribing an arriving alien's due process rights to *admission*, rather than limiting that person's ability to challenge *detention*.") (emphasis in original).  Moreover, Thuraissigiam concerned an individual arrested mere yards from the border a short time after entering the United States without inspection, and who DHS had never released into the country, not an individual like Petitioner who, again, was released on humanitarian parole and established meaningful ties to the United States.

Instead, the undersigned agrees with other district courts in this Circuit that have found that a noncitizen like Petitioner, who was released on parole into the United States, has a liberty interest in his continued release and is entitled to certain due process protections.  See M.B. v. Noem, No. 1:26-cv-0005 DJC AC, 2026 WL 74155, at *3 (E.D. Cal. Jan. 9, 2026); Chavarria v. Chestnut, No. 1:25-cv-1755 DAD AC, 2025 WL 3533606, at *3 (E.D. Cal. Dec. 9, 2025); Ramirez Tesara v. Wamsley, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. 2025); see also Rodriguez v. Marin, 909 F.3d 252, 256 (9th Cir. 2018) (noting in case involving § 1225(b) and related statutes that "[a]rbitrary civil detention is not a feature of our American government," and expressing "grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional").  "[T]he government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[ ] to live up to the ... conditions [of release]." Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) (quoting Morrissey, 408 U.S. at 482) (modifications in original).  "Accordingly, a noncitizen released from custody pending removal proceedings has a protected liberty interest in remaining out of custody." Salcedo Aceros v. Kaiser, No. 25-cv-6924 EMC, 2025 WL 2637503, at *6 (N.D. Cal. Sept. 12, 2025).

### ii.  Procedures Necessary to Safeguard Liberty Interest

To be clear, under the Mathews framework, and consistent with Judge Calabretta's prior decisions on the issue, the undersigned finds that the June 2025 revocation of Petitioner's parole

11

without notice or pre-deprivation hearing violated procedural due process. See Ortega, 2025 WL 3511914, at *3; Torres-Zuluaga v. Wofford, No. 1:26-cv-0318 DJC EFB, 2026 WL 184662, at *4–5 (E.D. Cal. Jan. 23, 2026); M.B., 2026 WL 74155, at *3. However, Petitioner has already received a remedy for this due process violation, albeit belatedly, in the form of the December 2025 bond hearing. As another judge explained in a factually similar case:

> The fact that a post-deprivation bond hearing may be insufficient to cure a procedural due process violation at the moment of re-detention does not render the resulting bond decision legally irrelevant . . . . Accordingly, even assuming a legal error occurred at the outset of Petitioner's detention, the IJ's subsequent bond denial supplies a lawful basis for his detention unless and until Petitioner demonstrates separate legal error invalidating that decision.

Singh v. Noem, No. 2:26-cv-0304 GJL, 2026 WL 482389, *3 (W.D. Wash. Feb. 20, 2026). Thus, the undersigned agrees with Judge Calabretta's conclusion in his TRO ruling that Petitioner has already received a remedy for the violation of his procedural due process rights.[8] Accordingly, Petitioner is not entitled to relief on his procedural due process claim (Count 2).

### C. Substantive Due Process Analysis

Petitioner also argues his detention violates substantive due process because it does not further the government's legitimate goals of ensuring his appearance during removal proceedings and preventing danger to the community. ECF No. 1 at 20, ¶¶ 107-109 (citing Zadvydas, 533 U.S. at 690); ECF No. 14 at 8. Respondents do not meaningfully engage with Petitioner's substantive due process claim and related post-TRO arguments. In their own post-TRO brief, Respondents insist only that the TRO ruling "should control" as to both due process claims. ECF No. 15 at 2. But Petitioner did not raise a substantive due process claim in his TRO. Petitioner

---

[8] Although a habeas writ does not provide a retrospective remedy for the roughly six months of detention without bond, a claim for damages challenging this period of allegedly unconstitutional detention is a potential vehicle for Petitioner's claim. See Lanuza v. Love, 899 F.3d 1019, 1026 (9th Cir. 2018) (emphasizing that the Supreme Court in Ziglar v. Abbasi, 582 U.S. 120 (2017) did not "bar[] extending Bivens remedies to an immigration case" or preclude the possibility of extending Bivens "to a case involving the substantive and procedural clauses of the Fifth Amendment"); but see Mirmehdi v. United States, 689 F.3d 975, 984 (9th Cir. 2012) (decision to detain noncitizen pending resolution of immigration proceedings fell within discretionary function exception to waiver of sovereign immunity under Federal Tort Claims Act).

12

applied the Mathews factors to argue that Respondents revoked his parole in violation of *procedural* due process.  See ECF No. 7 at 7-12.  In denying the TRO motion, Judge Calabretta held Petitioner received a remedy "for any violations of [his] parole revocation," ECF No. 12 at 3, n.1, which, again, was the premise of Petitioner's procedural due process claim.  See ECF No. 1 at 21, ¶¶ 114-115 (alleging his re-detention without pre-deprivation hearing violates procedural due process).  Accordingly, the undersigned will proceed to Petitioner's substantive due process claim as a matter of first impression.

"At the least, due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed."  Jackson v. Indiana, 406 U.S. 715, 738 (1972).  In the context of pretrial detention, the Ninth Circuit has held that "[a] [substantive] due process violation occurs when detention becomes punitive rather than regulatory, meaning there is no regulatory purpose that can rationally be assigned to the detention or the detention appears excessive in relation to its regulatory purpose."  United States v. Torres, 995 F.3d 695, 708 (9th Cir. 2021) (citing United States v. Salerno, 481 U.S. 739, 747 (1987)).  A judge within this Circuit analogized this framework to the immigration detention context as follows:

> As the Court in Zadvydas explained, "the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." 533 U.S. at 693, 121 S.Ct. 2491. Due process protects against immigration detention that is not reasonably related to the legitimate purpose of effectuating removal or protecting against danger and flight risk. See id. at 690-91, 121 S.Ct. 2491.

Padilla, 704 F. Supp. 3d at 1171-72; see also Larios v. Wofford, No. 1:26-cv-1498 DJC CKD, 2026 WL 765019, at *5 (E.D. Cal. Mar. 18, 2026) (recognizing availability of substantive due process claims in the context of immigration detention).

Petitioner does not suggest a framework for evaluating whether his detention has become punitive.  Several judges, including judges of this Court, Doe v. Chestnut, 810 F. Supp. 3d 1169 (E.D. Cal. 2025), have adopted the following five-factor balancing test developed by Judge Pitts of the Northern District of California: (1) the length of detention and whether it is excessive in

relation to its regulatory purpose; (2) the government's contribution to any delay; (3) the evidence supporting the determination that detention is warranted to prevent flight risk or community danger; (4) whether the government interests in ensuring appearance at future proceedings and protecting the community could be protected through alternatives to detention that are less harsh; and (5) the conditions of detention and how they compare to conditions under which pretrial criminal detainees or people convicted of crimes are held.  See Doe v. Becerra, 732 F. Supp. 3d 1071, 1080 (N.D. Cal. 2024) "(Doe v. Becerra II").  Applying these Doe v. Becerra II factors to conclude that Petitioner's current detention violates substantive due process.

### i.  Length of Detention

"[A]t some point, [civil] detention can 'become excessively prolonged, and therefore punitive,' resulting in a due process violation."  Torres, 995 F.3d at 708 (quoting Salerno, 481 U.S. at 747 n.4).  "But while the existence of some threshold of per se due process violation may be 'undisputed,' . . . it has also never been clearly delineated in the context of immigration detention."  Doe v. Becerra, 704 F. Supp. 3d 1006, 1020 (N.D. Cal. 2023) ("Doe v. Beccera I") (internal citation omitted).

> Ultimately, though, whether this prolonged detention is *excessive* and therefore punitive is a relative question. The duration of detention itself must be weighed against . . . the regulatory purposes for detention—preventing flight risk and protecting public safety.  Whether the duration of detention is excessive depends in part on the degree of those risks and the extent to which [the petitioner's] detention mitigates them.

Doe v. Becerra II, 732 F. Supp. 3d at 1083 (emphasis in original); see also Torres, 995 F.3d at 708 ("The point at which detention constitutes a due process violation requires a case-by-case analysis.").

Petitioner's detention has reached nearly thirteen months, which is undoubtedly prolonged.  See Chen v. Aitken, 917 F. Supp. 2d 1013, 1018 (N.D. Cal. 2013) (holding Petitioner's seven-month detention under § 1225(b) was "prolonged" because it "has lasted well beyond the typical period described in Demore[ v. Kim, 538 U.S. 510 (2003)]" and "neither release nor removal are imminent").  Petitioner's recent order of removal further suggests that he "faces an undetermined, but likely significant, period of mandatory detention through the appeals

14

process." Gao v. LaRose, 805 F. Supp. 3d 1106, 1111 (S.D. Cal. 2025). But while prolonged, the current one-year duration of Petitioner's detention, standing alone, does not violate substantive due process. See Torres, 995 F.3d at 699 (identifying the 21-months of pre-trial detention as "likely approaching the outer bounds of due process."). However, Petitioner has offered ample other evidence that this duration is excessive in relative to the minimal evidence of danger or flight risk.

### ii.    Government Contribution to Delay

Relevant to this analysis is whether the government is responsible for "delays that have contributed to the duration of detention." Doe v. Becerra II, 732 F. Supp. 3d at 1083; see also United States v. Gelfuso, 838 F.2d 358, 359 (9th Cir. 1988) (the due process limit on the length of pretrial detention requires consideration of "the length of confinement in conjunction with the extent to which the prosecution bears responsibility for the delay that has ensued"). In his post-TRO brief, Petitioner explained that the government successfully moved to reopen his removal proceedings on January 29, 2026, after he was ordered removed to Uganda, over his counsel's objections. ECF No. 14 at 8; see also Petitioner's EOIR Case Information page, *supra* n.2. As a result, at the time he filed his petition, Petitioner was in detention without a hearing date or an assigned IJ. Id. While Petitioner ultimately received a hearing and was ordered removed about four months later, Respondents do not refute that the government is responsible for extending Petitioner's removal proceedings and, by extension, his detention. Moreover, Respondents have not explained why they sought to remove Petitioner—who is from Venezuela—to Uganda in the first place. The resulting four-month delay, coupled with the government's unlawful, six-month delay in providing Petitioner with a bond hearing following revocation of his parole without notice or opportunity to be heard, factors toward a violation of substantive due process.

### iii.    Evidence of Flight and Danger Risk

Further, determining whether Petitioner's prolonged detention has become punitive requires consideration of the extent to which it serves its regulatory purposes of preventing flight and danger to the community. "This inquiry requires evaluating the degree to which [Petitioner] poses a flight risk or danger, which in turn requires the Court to consider the evidence related to

15

those risks." Doe v. Becerra II, 732 F. Supp. 3d at 1086. As the IJ did not make a danger finding and Respondents do not assert here that Petitioner is a danger, this factor will turn on the evidence related to Petitioner's flight risk.

The IJ ostensibly applied the discretionary factors identified by the BIA in Matter of Guerra, 24 I & N Dec. 37, 40 (BIA 2006):

> (1) whether the [noncitizen] has a fixed address in the United States; (2) the [noncitizen's] length of residence in the United States; (3) the [noncitizen's] family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the [noncitizen's] employment history; (5) the [noncitizen's] record of appearance in court; (6) the [noncitizen's] criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the [noncitizen's] history of immigration violations; (8) any attempts by the [noncitizen] to flee persecution or otherwise escape authorities, and (9) the [noncitizen's] manner of entry to the United States.

The IJ commented that Petitioner's arrest was "not helpful" to flight but expressly made a flight risk determination based on other factors: minimal family ties, lack of property ownership, short duration in the U.S., and limited availability of immigration relief. ECF No. 17-1 at 10.

The IJ's determination notwithstanding,[9] the undersigned finds that the evidence that the IJ reviewed, and that Petitioner resubmitted here for the Court's review, reflects minimum flight risk. Petitioner and his family entered the United States not through unlawful means but with an appointment through the CBP One app. Regarding family ties, Petitioner offered a declaration from his sponsor/cousin who attested that Petitioner lived with her in Euless, Texas, prior to his re-detention, and that she would house and financially support him if he were released from

---

[9] The undersigned's review of bond hearing evidence for purposes of the substantive due process analysis is wholly separate from the abuse of discretion analysis required to review Petitioner's challenge to his bond hearing (Count 4). As a fellow judge of this district has explained: "This Court is not bound by the IJ's determinations . . . and this Court is not reviewing the IJ's determinations under the abuse of discretion standard, see Martinez[v. Clark], 124 F.4th [775,] 784 [9th Cir. 2024]]. Rather, this Court is making an independent assessment of Petitioner's . . . flight risk in the context of Petitioner's substantive due process claim." Doe v. Chestnut, 810 F. Supp. 3d at 1186; see also Doe v. Becerra II, 732 F. Supp. 3d at 1086 ("This [substantive due process] inquiry requires evaluating the degree to which Mr. Doe poses a flight risk or danger, which in turn requires the Court to consider the evidence related to those risks.").

immigration custody.  ECF No. 7-1 at 8-10.  Petitioner also submitted a declaration from his partner that explains why their immigration status requires her to reside in Oakland, California, and how Petitioner financially supports her and their two minor children from Texas.  Id. at 11-15.  These family ties do not tend to show flight risk.

The undersigned further observes that immigration officials released Petitioner on humanitarian parole in December 2024 under either an express or implicit finding that he was "neither a security risk nor a risk of absconding."  8 C.F.R. § 212.5(b).  The other bases of the IJ's decision—Petitioner's short duration in the United States, lack of property ownership, and unlikelihood of immigration relief—do not represent materially changed circumstances from that initial finding.  See Qazi v. Albarran, 2025 No. 2:25-cv-02791-TLN-SCR, 2026 WL 2769837, at *3 (E.D. Cal. Sept. 29, 2025) ("Petitioner was previously released pursuant to a finding that he was not at risk of fleeing or harming others, and as such, due process prevents him from being re-detained except upon a showing of a material change in circumstances."); Kumar v. Noem, No. 1:26-CV-01148-DJC-AC, 2026 WL 983129, at *3 (E.D. Cal. Apr. 13, 2026) ("[A]t a minimum, it cannot be said that the limited availability of relief is evidence of flight that remotely approaches the clear and convincing standard the IJ purported to apply.").  In sum, for purposes of the substantive due process analysis, the undersigned finds minimal, if any, risk of flight.

Citing the lack of evidence, Petitioner argues that the purpose of his detention is "not to facilitate deportation, or to protect against risk of flight or dangerousness, but to incarcerate for other reasons—namely, to meet newly imposed DHS quotas[.]"  ECF No. 1 at 20, ¶¶ 110.  For support, he offers news articles regarding EOIR leadership intervention in IJ bond determinations (ECF No. 18 at 3-4) and the supplemental declaration of Dr. Joseph Gunther,[10] who analyzed publicly available data relating to bond grant and denial rates for C. White, the IJ in Petitioner's case.  ECF No. 18-1.  Dr. Gunther identified a "marked contrast" between IJ White's grant rates

---

[10] Dr. Gunther is an "independent researcher and editor" who current research focuses on "using public datasets to analyze immigration courts and Immigration and Customs Enforcement (ICE) arrests.  ECF No. 18-1 at 2, ¶4.  He holds a bachelor's degree in mathematics from the University of Chicago, a masters' degree in mathematics from the University of Texas at Austin, and a Ph.D. in mathematics from the City University of New York Graduate Center.  Id., ¶ 3.

in recent months compared to the first six months of 2025:

> From January 2025 through June 2025, IJ White granted bond more often than he denied it: 105 grants and 100 denials, for an overall grant rate of 51.2% in those first six months. Conversely, from July 2025 through December 2025, he granted bond 56 times and denied it 198 times, for a grant rate of 22.0%. In the last three months of available data—February 2026 through April 2026—his grant rate has declined further. In those three months, IJ White granted bond 20 times and denied it 114 times, for a grant rate of 14.9.%.

ECF No. 18-1 at 5.

Respondents object to Dr. Gunther's declaration as improper under Rule 7(b) of the Rules Governing Habeas Corpus Cases Under Section 2254. ECF No. 20 at 2. They further claim that his declaration is "unhelpful and irrelevant," as the change in denial rates "could be caused by a variety of factors including but not limited to an uptick in arrests of noncitizens with serious criminal history, the publication of Matter of Yajure Hurtado, 29 I&N Dec. 216 (BIA 2025) during the relevant period, and other factors which are not addressed in the analysis of the data by Dr. Gunther." Id.

Respondents' objections are unavailing. Rule 7 authorizes district courts "to expand the record to include additional material relevant to the determination of the merits of a petitioner's claims." Williams v. Schriro, 423 F. Supp. 2d 994, 1002 (D. Ariz. 2006); see also Sossa v. Diaz, 729 F.3d 1225, 1237 n.13 (9th Cir. 2013) (reversing dismissal of habeas petition as untimely and remanding with instructions to expand the record pursuant to Rule 7). The particular provision Respondents invoke, Rule 7(b), expressly states that "[a]ffidavits may also be submitted and considered as part of the record." Rule 7(b), Rules Governing Section § 2254 Cases, 28 U.S.C. foll. § 2254. Thus, the undersigned finds Dr. Gunther's supplemental declaration proper under Rule 7 and potentially relevant to the merits of Petitioner's substantive due process claim.

Dr. Gunther's findings, viewed together with the lack of evidentiary support for Petitioner's flight or danger risk, may support Petitioner's claim that his detention is punitive. The precipitous drop in the IJ's bond grant rate—from 51.2% in mid-2025 to 14.9% roughly a year later—shows that it is more likely than not that Petitioner's hearing did not involve an

18

individualized determination. The undersigned would hardly be the first jurist to reach this conclusion. See Singh v. Valdez, No. 26-CV-1109-WJM, 2026 WL 890240, at *5 (D. Colo. Apr. 1, 2026) ("[T]he mounting evidence that bond determination hearings conducted in Immigration Court under § 1226(a) have preordained outcomes has become impossible to ignore."); Garcia Ortiz v. Henkey, No. 1:26-CV-00043-BLW, 2026 WL 948275, at *4 (D. Idaho Apr. 7, 2026) (noting evidence that "Immigration Judges across the country are systemically denying bond to [noncitizen] detainees, regardless of the weight of the evidence."). However, despite Petitioner's counsel contending that Dr. Gunther evaluated only IJ White's substantive decisions—excluding decisions where IJ White found no jurisdiction for a bond hearing—that contention is not clear from Dr. Gunther's declaration. As a result, the undersigned gives only minimal weight to Dr. Gunther's declaration in finding that Petitioner's prolonged detention is excessive in relation to any purpose to prevent flight.[11]

### iv. Conditions

Substantive due process also imposes outer bounds on the conditions of civil immigration detention. Doe v. Becerra II, 732 F. Supp. 3d at 1080; Jones v. Blanas, 393 F.3d 918, 932 (9th Cir. 2004) ("[W]hen a [civil] detainee is confined in conditions identical to, similar to, or more restrictive than, those in which his criminal counterparts are held, we presume that the detainee is being subjected to 'punishment.'"). Petitioner alleges he is "incarcerated in penal institution like conditions at the California City Corrections Center," ECF No. 1 at 19, ¶ 104, but does not elaborate in a way that would permit meaningful analysis. While conditions do not strongly factor towards a due process violation, the undersigned observes that other courts have noted poor conditions at this facility. See Kaur v. United States Dep't of Homeland Sec., 813 F. Supp. 3d 1167, 1172 (E.D. Cal. 2025) (noting allegations that the conditions at California City were "abysmal," with "frigid" temperatures and water that "tast[ed] like bleach or detergent"); Doe v.

---

[11] As Petitioner asserts that he is not a flight risks, ECF No. 1 at 20, ¶ 109, he has not put forth arguments reasonably related to the fourth factor, alternatives to detention to mitigate those risks. However, to the extent Petitioner poses a cognizable risk of flight, there are routine and obvious conditions that ICE could impose, including check-ins with ICE officials and electronic monitoring.

Chestnut, 810 F. Supp. 3d at 1201 ("[T]he evidence now before the Court at least suggests several important ways in which the conditions at [California City] are not only inherently harsh but also worse than the conditions [. . . ] in state prison.") (citing Doe v. Beccera II, 732 F. Supp. 3d at 1089); Tigranyan v. Warden of California City Det., No. 1:25-CV-01554-DJC-SCR, 2026 WL 91765, at *6 (E.D. Cal. Jan. 13, 2026) (noting investigation and report by Disability Rights California finding that California City fails to provide necessary medical and mental health care and fails to other meet basic needs), report and recommendation adopted, No. 1:25-CV-01554-DJC-SCR, 2026 WL 130843 (E.D. Cal. Jan. 16, 2026).

### v. Conclusion as to Substantive Due Process Analysis

On balance, the undersigned finds that Petitioner has established that his detention is excessive in relation to his minimal flight and danger risk. Petitioner has now spent nearly thirteen months in immigration detention following an arrest for a low-level, Class C misdemeanor with a maximum fine of $500. The record establishes that during that time, Respondents have denied Petitioner the hallmarks of non-punitive, immigration detention—i.e., a prompt individualized hearing before a neutral decisionmaker to ensure that the imprisonment serves the government's legitimate goals, Padilla, 704 F. Supp. 3d at 1171-72, Salerno, 481 U.S. at 750–51——and further extended his detention by seeking to remove him to Uganda and then reopening his removal proceedings. Petitioner has offered ample evidence refuting the existence of any flight risk. Accordingly, the undersigned finds that Petitioner's detention has become punitive and recommends that the petition be granted on Count 1. In the interests of judicial economy, the undersigned does not address Petitioner's challenge to the legal adequacy of the December 2025 bond hearing (Count 4).

### IV. Remedy

The undersigned next turns to the appropriate remedy:

> Federal habeas corpus practice, as reflected by the decisions of [the Supreme] Court, indicates that a court has broad discretion in conditioning a judgment granting habeas relief. Federal courts are authorized, under 28 U.S.C. § 2243, to dispose of habeas corpus matters 'as law and justice require.'" Hilton v. Braunskill, 481 U.S. 770, 775 [] (1987). "[H]abeas corpus is, at its core, an equitable remedy." Schlup

20

v. Delo, 513 U.S. 298, 319[] (1995).    "Moreover, in constitutional adjudication as elsewhere, equitable remedies are a special blend of what is necessary, what is fair, and what is workable."  Lemon v. Kurtzman, 411 U.S. 192, 200 [] (1973) (footnote omitted).

Doe v. Chestnut, 810 F. Supp. 3d at 1202.  The undersigned finds that appropriate remedy for this violation of substantive due process is release with standard conditions of supervision.  See id. (ordering release with "appropriate conditions so that the government's significant interests in ensuring Petitioner's appearance at future proceedings, protecting the community, and that, if ordered removed, Petitioner will be successfully removed, are protected."); Zadvydas, 533 U.S. at 700 ("[T]he [noncitizen]'s release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the [noncitizen] may no doubt be returned to custody upon a violation of those conditions.").

**CONCLUSION**

Accordingly, IT IS HEREBY RECOMMENDED that:

1.    Petitioner's petition for writ of habeas corpus (ECF No. 1) be GRANTED on Count 1 (substantive due process) as follows:

  a.    Respondents shall IMMEDIATELY RELEASE Petitioner Robert A. Rivas Campos' (A# 244-851-525) from custody. At the time of release, Respondents must return all of Petitioner's documents and possessions.

  b.    Respondents may place Petitioner on standard conditions of supervision upon release.

2.    The Clerk be directed to:

  a.    Serve the California City Detention Center with a copy of this Order; and

  b.    Enter judgment in Petitioner's favor and close the case.

3.    Any order adopting these findings and recommendations include language that it does not address the circumstances in which Respondents may detain Petitioner in the event Petitioner becomes subject to an executable final order of removal and Petitioner receives notice of that final order of removal.

21

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **seven days** after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs. See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:  June 24, 2026

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE

22